AO 91 (Rev. 02/09) Criminal Complaint

# United States District Court
### for the
### Western District of New York

OCT 1 0 2017

MARY C. LOEWENGUTH, CLERK
WESTERN DISTRICT OF NY

| | |
|---|---|
| United States of America<br><br>v.<br><br>MICHAEL GIOKAS<br><br>*Defendant* | Case No. 17-mj-5271<br>(SEALED) |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

Between on or about the date of May 23, 2017 through August 25, 2017, in the County of Erie, in the Western District of New York, the defendant did knowingly commit wire fraud, in that he devised and intended to devise a scheme to defraud and to obtain money by means of false and fraudulent pretenses, representations and promises, and, for the purpose of executing such a scheme, transmitted and caused to be transmitted, by means of wire communication in interstate and foreign commerce, writings, signs, signals and sounds, in the form of wire transactions through financial institutions, in violation of Title 18, United States Code, Section 1343.

This Criminal Complaint is based on these facts:

☒ Continued on the attached sheet.

_____
*Complainant's signature*

BRENDAN M. DONLAN
SPECIAL AGENT
FEDERAL BUREAU OF INVESTIGATION
*Printed name and title*

Sworn to before me and signed in my presence.

Date: October 10, 2017

_____
*Judge's signature*

City and State: Buffalo, New York

MICHAEL J. ROEMER
UNITED STATES MAGISTRATE JUDGE
*Printed name and title*

## AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT

STATE OF NEW YORK   )
COUNTY OF ERIE      )  SS:
CITY OF BUFFALO     )

Brendan M. Donlan, being duly sworn, deposes and states:

### INTRODUCTION

1. I am a Special Agent of the Federal Bureau of Investigation (FBI) and have been so employed since 2009. I am currently assigned to the Buffalo Field Office and to the White Collar Crime Squad within that office. My duties include the investigation of such offenses as bank fraud, investment fraud, money laundering, corporate fraud, mail fraud, wire fraud, public corruption, bankruptcy fraud and other white collar crimes. The FBI is an agency within the United States Department of Justice, which is a department within the executive branch of the United States Government.

2. I make this Affidavit in support of the issuance of a Criminal Complaint charging MICHAEL GIOKAS ("GIOKAS") with Wire Fraud, in violation of Title 18, United States Code, Section 1343.

3. I have knowledge of the facts upon which this Affidavit is based from my own investigation and from discussions with and review of reports of other law enforcement officers and witnesses. Because this Affidavit is submitted for the purpose of establishing probable cause to support the issuance of a Criminal Complaint and Arrest Warrant, I have not included each and every fact known by the government for this investigation.

## BACKGROUND

6. The information set forth below establishes probable cause to believe that GIOKAS has engaged in a scheme to defraud and obtain money from an individual by misrepresenting the existence of an investment opportunity.

7. At all relevant times, GIOKAS resided in the Western District of New York. GIOKAS is the President of Giokas Wealth Advisors, Inc. and the President of Trinity Council, LLC ("Trinity Council"), both of which are located at the same address in the Western District of New York. GIOKAS is a financial advisor responsible for managing the investments of approximately forty-three clients.

8. As part of the investigation, your Affiant interviewed an individual, hereinafter referred to as "Victim #1," and Victim #1's son. Victim #1 is a retired individual who resides within the WDNY. GIOKAS has been Victim #1's financial advisor for approximately twelve to fifteen years. GIOKAS manages Victim #1's retirement savings in various annuities and mutual funds with Nationwide Mutual Insurance Company ("Nationwide").

9. In approximately May 2017, Victim #1 and his son met with GIOKAS at GIOKAS' office. Victim #1 expressed a desire to see more growth from his investments. GIOKAS advised Victim #1 to withdraw $200,000 from his Nationwide accounts to place into an investment through GIOKAS that would earn guaranteed interest between eight and nine percent. Victim #1 would be able to live off the interest, in addition to his social security

income. GIOKAS advised Victim #1 that his principal would not be at risk, which was desirable given Victim #1's age. During this meeting and prior to Victim #1 withdrawing the $200,000, GIOKAS did not provide specific information as to what the $200,000 would be invested in. Victim #1 believed he would have access at any time to the $200,000 invested with GIOKAS. Victim #1 believed his funds were going to be invested properly by GIOKAS and that none of the funds would go into GIOKAS' personal accounts.

10. Based on GIOKAS' representations and at GIOKAS' direction, Victim #1 electronically transferred $200,000 from his Nationwide accounts into his personal account at M&T Bank.

11. On May 23, 2017, Victim #1 wrote a $200,000 personal check and made it payable – at the direction of GIOKAS – to Trinity Council. Victim #1 delivered the check to GIOKAS. Neither Victim #1 nor his son knew what Trinity Council was. Victim #1 never received any interest payments or statements from GIOKAS related to his $200,000 investment.

12. In approximately August 2017, Victim #1 and his son again met with GIOKAS at his office. Victim #1 told GIOKAS that he wanted to increase his monthly income. GIOKAS advised Victim #1 that he should withdraw another $250,000 from his Nationwide accounts and invest with GIOKAS. Victim #1 understood this investment was going to be invested by GIOKAS in the same way as his previous $200,000.

13. Based on GIOKAS' representations and at GIOKAS' direction, Victim #1 electronically transferred $275,000 from his Nationwide accounts into his personal account at M&T Bank.

14. On August 23, 2017, Victim #1 wrote a $250,000 personal check and made it payable – again at the direction of GIOKAS – to Trinity Council. Victim #1's son provided the check to GIOKAS on Victim #1's behalf.

15. On August 25, 2017, GIOKAS deposited the $250,000 check into his Trinity Council M&T Bank account. Shortly thereafter, M&T Bank determined the check to be suspicious and returned the funds to Victim #1.

### Consensual Recording on September 08, 2017

16. On September 8, 2017, Victim #1's son made a consensual recording of a telephone conversation he had with GIOKAS. Victim #1's son had previously asked GIOKAS about the $200,000 investment Victim #1 had made with GIOKAS in May 2017. GIOKAS told Victim #1's son that he had "created a funding program" through Trinity Council, where Trinity funds "corporations" and "private companies." GIOKAS stated, "I'm doing a very small program…with no more than about a million point five [$1.5 million] in, uh, in the funding and so my job is to secure the funding, secure the interest, secure the collateral in through Trinity Council…." GIOKAS continued, "So we're, we're doing some very small little programs that are guaranteed, uh, interest and they're collateralized to us and then we would pass that off obviously to, to your dad or whomever so the program is just

funding and we have a couple of corporate funding clients right now that we use this funding for already...."

17. Victim #1's son asked GIOKAS if the $200,000 was going to be invested in the stock market or a money market fund, to which GIOKAS responded, "Nope, nope, nope, nope. It's all uh secured, secured stuff so we have a guaranteed interest rate so dad can get his monthly income coming out of the accounts...."

18. Victim #1's son asked GIOKAS if his father was going to receive quarterly statements that showed where the $200,000 was invested and how it was used. GIOKAS responded, "Well no, no quarterly statements on it and the reason for it is that the, by law in terms of how we work with what's called our privacy policy, some of these people are, are clients of ours through the investment world and according to the SEC we have a, a privacy issue in terms of disclosure."

19. Victim #1's son asked GIOKAS if the principal amount of $200,000 was guaranteed to which GIOKAS stated, "... the principal's guaranteed, yes." GIOKAS later stated, "... your dad's, uh, interest is only the interest he would earn plus his principal guarantee...." GIOKAS confirmed that the interest rate was nine percent and that the interest plus the principal would be returned to Victim #1 in one lump sum check at the end of the program, which was expected to last one year.

20. Victim #1's son asked GIOKAS if he was collecting a fee from Victim #1 on this $200,000 investment. GIOKAS responded "No. No. We're not collecting any fees from you...."

**Financial Analysis**

21. On May 23, 2017, Victim #1 wrote a personal check drawn on his bank account at M&T Bank in the amount of $200,000 made payable to "Trinity Council" and provided the check to GIOKAS. Victim #1 had transferred these funds from his Nationwide accounts into his bank account at M&T Bank via wire transfer.

22. On May 25, 2017, GIOKAS deposited Victim #1's $200,000 check into an account in the name of Trinity Council LLC at M&T Bank. This was the opening deposit for the account. No other deposits were noted between May 25, 2017 and August 23, 2017. GIOKAS was the sole signer on this bank account.

23. On May 26, 2017, GIOKAS used the funds from the Trinity Council M&T Bank account to purchase an official bank check from M&T Bank for $150,000. GIOKAS deposited the check on the same date into an Empower Federal Credit Union ("EFCU") account in GIOKAS' name.

24. On June 23, 2017, GIOKAS purchased another official bank check from M&T Bank for $45,000 and deposited the check into the same EFCU account.

25.  Between May 26, 2017 and July 10, 2017, GIOKAS transferred a portion of the $195,000 received into his personal EFCU account into another account held at EFCU in the name of Giokas Wealth Advisors. GIOKAS was the sole signer on both EFCU accounts. During this time period, other than a few de minimis deposits, the $195,000 received from the Trinity Council M&T Bank account were the only deposits in either EFCU account.

26.  Between May 26, 2017 and July 10, 2017, of the $195,000 transferred to EFCU from Victim #1's $200,000, approximately $191,000 was used by GIOKAS for personal, non-investment related matters. The unauthorized use of Victim #1's investment is detailed in the following chart:

| BENEFICIARY | CATEGORY PERSONAL EXPENSES | TYPE | DATE | AMOUNT |
|---|---|---|---|---|
| M GIOKAS | GROCERY & FUEL | DEBIT CARD TRANSACTIONS | 05/27/2017 - 07/10/2017 | $2,301.50 |
| M GIOKAS | INDIVIDUALS | CHECKS | 06/02/2017 - 07/05/2017 | $11,038.01 |
| M GIOKAS | LEGAL & ACCOUNTING | CHECKS & ACH WIRES | 06/08/2017 - 06/30/2017 | $22,667.00 |
| M GIOKAS | LOANS, MORTGAGES & CREDIT CARDS | CHECKS & ACH WIRES | 05/26/2017 - 07/06/2017 | $87,064.62 |
| M GIOKAS | RENT | ACH WIRES | 6/14/2017 | $3,600.00 |
| M GIOKAS | RESTAURANTS & RETAIL | CHECKS & DEBIT CARD TRANSACTIONS | 05/26/2017 - 07/10/2017 | $11,153.15 |
| M GIOKAS | TRAVEL | DEBIT CARD TRANSACTIONS | 06/23/2017 - 07/10/2017 | $9,664.25 |
| M GIOKAS | UTILITIES & TELEPHONES | ACH WIRES | 06/01/2017 - 07/07/2017 | $3,994.45 |
| M GIOKAS | PAYROLL | ACH WIRES | 05/31/2017 - 06/28/2017 | $4,572.81 |
| M GIOKAS | MISCELLANEOUS (MEDICAL, ENTERTAINMENT, GOLF, ETC.) | CHECKS, ACH WIRES & DEBIT CARD TRANSACTIONS | 05/27/2017 - 07/10/2017 | $18,950.36 |
| M GIOKAS | WITHDRAWALS | WITHDRAWALS | 05/26/2017 - 07/10/2017 | $15,728.08 |
| | | | TOTAL | $190,734.23 |

## CONCLUSION

27. Based on the foregoing, it is respectfully submitted that there is probable cause to find that MICHAEL GIOKAS has committed Wire Fraud in violation of Title 18, United States Code, Section 1343, in that he devised and intended to devise a scheme to defraud and to obtain money by means of false and fraudulent pretenses, representations and promises, and, for the purpose of executing such a scheme, transmitted and caused to be transmitted, by means of wire communication in interstate and foreign commerce, writings, signs, signals and sounds, in the form of wire transactions through financial institutions.

28. It is respectfully requested that this Court issue an Order sealing, until further order of this Court, all papers submitted in support of this Application, including the Application, Affidavit and Arrest Warrant. Sealing is necessary because the premature disclosure of the contents of this Affidavit and the existence of an Arrest Warrant may negatively impact this ongoing investigation.

BRENDAN M. DONLAN
Special Agent
Federal Bureau of Investigation

Sworn to before me this 10th day of October, 2017.

MICHAEL J. ROEMER
United States Magistrate Judge